R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 1 2 2012

FILED_____ _____
DOCKETED_____
                              DATE          INITIAL

IN THE UNITED STATES COURT OF APPEALS

IN AND FOR THE NINTH CIRCUIT

At San Francisco, CA

UNITED STATES,           ) No. 11-30351

   Plaintiff-Appellee,     ) USDC 2:11-cr-0057-RSM

                         ) APPELLANT'S SUPPLEMENTAL

        vs.              ) BRIEF per June 6, 2012

                         ) Order.

David R. Myrland,        )

   Defendant-Appellant, )

_____

I. INTRODUCTION & FACTS.

   1.1 COMES NOW, David R Myrland (hereinafter "Appellant")
seeking review of the decision below which culminated in a
guilty plea under facts which do not constitute an offense
under the charging statute 18 USC § 875(c).

/ of 55

1.2 Appellant is factually innocent under controlling
precedent and seeks admission through the Schlup v. Delo
gateway for the actual innocence exception to procedural
default. A failure to reverse Appellant's conviction would
result in a miscarriage of justice and due process violation
of the most basic sort.

1.3 At all times complained of the Appellant was behaving
as is permissible under WA state law and under federal law
and, in fact, pled only to 'threatening to cause others to'
act as is permissible under WA state law and under federal law
by simply sharing with them his evidence of crime on the part
of another. Appellant's PSI letter and allocution letters to
district court are true and correct and are incorporated by
this reference as if full restated herein. (Doc. #45, 54).

1.4 This is the difference between the language of the
indictment and the plea agreement in this case:

Indictment: Appellant "threatened to use force to enter J.M.'s
home and "arrest" her."

Plea agreement: "Specifically, [Appellant] threatened to cause
others to enter J.M.'s home to "arrest" her by law[.]"

1.5 The term "arrest" was placed in quotation marks both
times by Appellee. This case stems from Appellant's Aug. 30,
2010 email to a felon who has never denied a single accusation
Appellant has made in over 450+ pages of criminal complaints
with exhibits filed with authorities between Aug. 4, 2009 and
Oct. 7, 2010. Appellant had tried everything to keep matters

from coming to the possible citizen's arrest of said felon but
was unsuccessful.

*Begin text of Aug. 30, 2010 email as it is found in the
Appellant's Jan. 21, 2011 criminal complaint in this case, at
it's pg.5:

"On Friday, Sept. 3, 2010, I David Russell Myrland, will apply
to a panel of Americans to offer evidence of felonious conduct
on your part, which constitutes an ongoing threat to Public
Safety, hoping to cause the issuance of a WRIT OF PROBABLE
CAUSE" to substantiate the arrest of your person under RCW
9A.16.020.

    "Upon the issuance of said Writ, 50 or more concerned
Citizens with knowledge of your crimes will enter your home
and arrest you, to take you to competent authorities as
provided by law. DO NOT RESIST as these Citizens will be
heavily armed and will meet all resistance with all necessary
force, as provided by law. [omission] If you default or
otherwise do not appear, and if my application is granted, I
would advise you to keep your front and back doors to your
home UNLOCKED to better facilitate your lawful arrest."

*End email. In the above text, "[omission]" signifies the
Appellee's omission of, "IF YOU HAVE EVIDENCE TO THE CONTRARY
[you can appear and defend by submitting it to the panel]."
The panel was actually going to grant J.M. access to this
process to prevent an arrest of her person if she is
innocent.

1.6 The district court and appointed counsel refused to acknowledge as permissible conduct the citizen's arrest of a felon, and drew no line between making such an arrest one's self and causing others to do so by simply sharing evidence of crime with them.

1.7 Appellant did inform J.M. that he intended to share his evidence and testimony with others, that J.M. could appear and disprove his allegations, and that others would make an arrest under RCW 9A.16.020 if they deemed J.M. to be a felon. Inasmuch as the plea agreement has this factual allegation, Appellant is not so much challenging the plea agreement as much as he is alleging that the charge is one the Appellee has no power to bring in the first place.

1.8 FURTHER, the indictment points only to an "arrest" of J.M. and not to any threatened act of unlawful violence (no true threat against J.M.), so the indictment fails to invoke the subject matter jurisdiction of the district court, as it relates to 18 USC § 875(c).

1.9 District court and appointed counsel made an error of law relating to the core of Appellant's defense by maintaining that conduct authorized by RCW 9A.16.020 was unlawful violence, and this prejudiced the Appellant, infecting the proceedings below in a way that deprived him of due process from the start to the finish of said proceedings.

1.10 At sentencing the district court erred in equating Appellant's prediction of citizen's arrest by others and his threat to share his public record with the overt death threats made against U.S. Senator Patty Murray and U.S. Representative James McDermott by defendants in cases (Wilson, Habermann

4

respectively) cited by counsel in disparity arguments in Appellant's sentencing memorandum.

1.11 From this point district court made upward departures including one for Appellant's bona fide intent which the others lacked without considering that the "threat" Appellant made was only to share his evidence of crime. This circumvention of 18 USC § 3553 makes Appellant's sentence illegal, as it relates to Guidelines heartland and all enhancements.

1.12 FURTHER, a 40 month sentence for threatening to share evidence of crime or to harmlessly arrest a felon "as provided by law" is excessive, in violation of the 8th Amdt. to the U.S. Constitution.

1.13 At no time did appointed counsel make any attempt to investigate Appellant's history of confrontation with the City of Kirkland over its abuses and derelictions dating back to as early as 1999, justifying said failure through the insistence upon keeping victim's conduct and Appellant's duress therefrom totally off the table of discussion and argument.

1.14 Also justified by the wrongful conclusion that Appellant was guilty because citizen's arrest is illegal, despite the truth to the contrary, was counsel's failure to challenge the indictment which contained no reference to unlawful violence but which accused the Appellant of merely "threaten[ing] to use force to "arrest" J.M.".

1.15 At sentencing counsel failed to present any evidence in mitigation to reduce Appellant's sentence, for no investigation had been conducted when, in fact, just prior to Oct. 7, 2010 Appellant had filed in King County Superior Court

(#10-10-6999-9SEA) his 450+ pages of criminal complaints and e
xhibits spanning more than one year where his purported victim
was accused of many WA state and federal felonies which remain
in tacit acquiescence.

1.16 In addition, Appellant even sued the purported
victim in superior court to prevent a confrontation, in Nov.
2009 (Myrland v. City of Kirkland, #09-2-41671-SEA filed Nov.
17, 2009 King County Superior Court, dismissed without
prejudice, not on merits), and nothing was done to correct the
derelictions Kirkland had committed which continue to damage
the Appellant to this day. Kirkland has refused since Sept. 9,
2003 to have a hearing over Appellant's motion to vacate a
misdemeanor conviction in its municipal court, but this void
judgment showed up in Appellant's PSR prior to sentencing.

1.17 Instead of raising applicable or relevant 5K2 claims
for victim's conduct and duress, counsel raised the "martyr
defense" which has never been done before, in any case, and
was not agreed to by the Appellant who was told that duress
would indeed be argued.

1.18 Counsel also left it to the Appellant to defend his
arrest record at sentencing after telling the Appellant it
would be addressed by counsel. Appellant was told that he
would have the opportunity to review the sentencing memorandum
before its filing but was denied this opportunity.

1.19 The factual allegation in the plea agreement makes
Appellant guilty under district court's Feb. 24, 2011 ruling
as to the definition of "threat" being any reference to RCW
9A.16.020, any opinion about the operation of the law, a
letter from a stranger in Texas, and any unsigned statement

6

accusing somebody of criminal conduct, e.g., "threatened to cause others to [arrest J.M.] by law." (See Exhibits 1-4 from Feb. 24, 2010 pre-trial detention hearing).

1.20 HOWEVER, this Court ruled in summer 2011 that incitement of others to injure of kill a presidential candidate is protected speech, that a true threat must be an expression of an intent to commit an act of unlawful violence against another individual or group of individuals, made in terms of first-person context; this Appellant DID NOT do. (See US v. Bagdasarian, 652 F.3d 1113 (CA9 2011)).

1.21 Appellant did intend his email to reference WA state law so he is indeed guilty of issuing a true threat, as district court defines the term. HOWEVER, neither the indictment nor the factual allegation in his plea agreement states an offense in any court intent upon honoring precedent as every court must. (See Hart v. Massanari, 266 F.3d 1155 (CA9 2001)).

1.22 When the Appellant informs or warns a felon that he intends to share evidence of crime that is likely to cause others, of their own volition, to arrest said felon "by law" or "as provided by law" or to make a "lawful arrest," has he threatened to commit unlawful violence himself? No.

1.23 So, Appellee and district court base Appellant's charge, plea, conviction, and sentence upon his having dared to mention WA state law in an email while failing to threaten acts of unlawful violence on his own part or on the part of others; Appellant is guilty.

1.24 However, the charging statute does not make this a crime, and for its affront to the 1st and 5th Amdts. to the

7

U.S. Constitution it is a charge the Appellee may not bring in the first place; the action against the Appellant is void ab initio.

1.25 The arbitrary and discriminatory nature or fabric of Appellee's interpretation and application of the charging statute becomes clear from a contemplation of the question as to how RCW 9A.16.020(1), infra at ¶ 3.25, is not ALSO punishable when uttered via email, when law enforcement mails or emails an intent to make an arrest or "threatens" to cause other law enforcement personnel to make such an arrest as provided thereunder.

1.26 Why would subsection (2) be unlawful (citizen's arrest) while subsection (1) remains legal? When WA state law allows BOTH of these arrests to be performed, how does one withstand Appellee's interpretation while the other does not, and how is the individual who reads RCW 9A.16.020 supposed to know in advance that such an offer to use force, in subsection (2), is prohibited by 18 USC § 875(c), when the arrest under (1) is permitted? How can Appellee abolish what the WA legislature expressly permits?

1.27 Appellant has not contended that his plea agreement was unwilling or uninformed, but rather that it accuses him of legal conduct. As a contract, Appellant's plea agreement cannot be viewed as the source of jurisdiction, which must come from U.S. Constitution Article III or from statute. While Appellant did sign the agreement, the facts and conduct of which he is accused do not constitute a true threat, rendering his conviction a violation of due process. The plea agreement cannot and does not to allow a fundamental miscarriage of

justice to stand by barring a claim of actual innocence and access to the Schlup gateway.

1.27 Appellant is innocent, his sentence is illegal and unconstitutional, counsel was ineffective, the indictment fails to state an offense, the district court abused its discretion (error of law), and the charge is one the Appellee cannot bring in the first place.

1.28 A fortiori, Appellant's appeal waiver is unenforceable, the Schlup gateway is open to him despite any and all procedural defaults committed by ineffective counsel, subject matter jurisdiction is lacking ab initio, and he "is entitled to go free." (See Bond v. US, 131 S.CT. 2355, USSC #09-1227 (June 16, 2011), Ginsburg, J. concurring opinion)).

1.29 To allow his conviction to stand would result in a fundamental miscarriage of justice, and to punish him for doing what the law plainly permits is a due process violation of the most basic sort.

## II. ISSUES & ASSIGNMENT OF ERRORS.

ERRORS:

1. The lower court erred (error of law, abuse of discretion) by maintaining that conduct authorized by RCW 9A.16.020 is unlawful violence, and that Appellant's sharing documents on public record with others is unlawful violence, and that any reference to either is a "threat."

2. The lower court erred at sentencing by equating Appellant's expression of an intent to share documents (public record) with others he had met, with other defendants' expressions (in their cases) of their intent to murder entire

9

families of Congressmen, to justify the sentence in this case. (Disparity 18 USC § 3553).

 3. The lower court erred by failing to consider this case outside the "heartland" of th Sentencing Guidelines as they were intended.

 4. The lower court erred by failing to consider the nature and circumstances of the offense. (18 USC § 3553, victim's conduct, duress).

 5. The lower court erred by failing to consider the light severity of the offense. (18 USC § 3553, severity of the offense).

ISSUES:

1. Ineffective counsel: Refusal-failure to investigate and present mitigating evidence at sentencing, or to argue for downward departures per 5K2 rules.

2. Actual innocence:
 A. Citizen's arrest is not unlawful violence.
 B. True threat or protected speech.

3. Actual innocence, Schlup gateway through procedural default of constitutional claims.

4. Subject matter jurisdiction is lacking ab initio, indictment fails to state an offense, charge the appellee may not prosecute, abuse of discretion.

10

5. Sentence is illegal and unconstitutional.

    A. Sentence violates 18 USC § 3553, case is outside of Guidelines' heartland.

    B. Sentence is unconstitutional.

6. Appeal waiver is unenforceable, shall not apply.

7. Charging statute is facially and legally void.

8. As a contract, plea agreement cannot bar actual innocence claim and Schlup gateway.

9. Prosecutor's breach of plea agreement requires resentencing.

### III. OPENING BRIEF OF THE ISSUES.

1. Ineffective counsel: Failure to investigate or present mitigating evidence at sentencing, or to argue for downward departures per § 5K2 Rules.

    3.1 "The Sixth Amendment right to counsel is criminal trials includes 'the right to effective assistance of counsel.' " (See Summerlin v. Schriro, 427 F.3d 623, 629 (CA9 2005) (quoting McMann v. Richardson, 397 US 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

    3.2 "This right extends to 'all critical stages of the criminal process,' including capital sentencing." Id.

    3.3 Trial counsel's performance fell below an objective

11

standard of reasonableness, and there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding in district court would have been different. (See Strickland v. Washington, 466 US 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

   3.4 To perform effectively counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all of the available mitigating evidence. (See Allen v. Woodford, 395 F.3d 979, 1000 (CA9 2005) (citing Mayfield v. Woodford, 270 F.3d 915, 927 (CA9 2001), en banc); see also Summerlin, 427 F.3d at 629-30).

   3.5 Moreover, when "tantalizing indications in the record" suggest that certain mitigating evidence may be available, those leads must be pursued. (See Stankewitz v. Woodford, 365 F.3d 706, 719-20 (CA9 2004); see also Summerlin, 427 F.3d at 632 (finding ineffective assistance where trial counsel failed to obtain readily available evidence concerning possible mental health mitigation where his client's prior attorney told him there were indications that the defendant was mentally ill); Wallace v. Stewart, 184 F.3d 1112, 1115-16 (CA9 1999) (finding ineffective assistance where trial counsel spent only two hours interviewing potential witnesses, just over 30 minutes with a psychiatric expert, and failed to contact knowing and willing witnesses); Seidel v. Merkle, 146 F.3d 750, 756 (CA9 1998) (finding ineffective assistance where defense counsel "failed to conduct even a minimal investigation in order to make an informed decision" regarding his client's mental health defense)).

12

3.6 A failure to investigate a defendant's history and failure to present mitigating evidence at sentencing constitutes ineffectiveness on counsel's part. Pre-trial and pre-sentencing investigations deserve equal effort an depth. (See Brown v. Sternes, 304 F.3d 677 (CA7 2002); Johnson v. Baldwin, 114 F.3d 835 (CA9 1977); Duncan v. Ornoski, 528 F.3d 1222 (CA9 2008); Anderson v. Sirmons, 476 F.3d 1131 (CA10 2007); Williams v. Anderson, 460 F.3d 789 (CA6 2006); Harries v. Bell, 417 F.3d 631 (CA6 2005); Hamblin v. Mitchell, 354 F.3d 482 (CA6 2002); Frazier v. Huffman, 343 F.3d 780 (CA6 2003); Battenfield v. Gibson, 236 F.3d 1215 (CA10 2001); Carter v. Bell, 218 F.3d 581 (CA6 2000); Jackson v. Calderon, 211 F.3d 1148 (CA9 2000)). From Summerlin:

"For example, the Supreme Court has cited with approval the ABA Standards for Criminal Justice as indicia of the obligations of criminal defense attorneys. Rompilla v. Beard, 162 L.Ed.2d 360, 125 S.Ct. 2456, 2465-66 (2005); Williams [v. Taylor], 529 US 362, 365, 146 L.Ed.2d 389, 120 S.Ct. 1495 (2000); see also Wiggins, 539 US at 524 (noting that "we have lng referred [to ABA Standards] as 'guides to determining what is reasonable' " (quoting Strickland, 466 US at 688)). The standards in effect at the time of Summerlin's trial clearly described the criminal defense lawyer's duty to investigate, providing specifically that:

"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to merits of the case

and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt of the accused's stated desire to plead guilty. ABA Standards for Criminal Justice 4-4.1 (2d Ed. 1980)."

*End quote of Summerlin, supra.

3.7 Counsel's failure to investigate or present mitigating evidence at sentencing is sufficiently demonstrated by the record.

3.8 Appellant learned on Sept. 30, 2010 that he had been charged in King County Superior Court (#10-10-6999-9SEA) with threatening a public servant to influence their vote, decision, determination, opinion or other official action.

3.9 Before his Oct. 7, 2010 arraignment on this charge he filed a motion to dismiss with 400+ pages of criminal complaints he filed with J.M. over the previous year relating to J.M.'s refusal to correct its dereliction that cost the Appellant his driver's license.

3.10 ALSO before his arraignment Appellant filed in his state case two criminal complaints supported by the same exhibits. His motion made an essential elements challenge challenging the plaintiff there to identify the "official action" to which it was alluding, e.g., unlawful imprisonment, 1st degree theft, possession of stolen firearm, theft of property and bill of sale, sale of stolen property at auction - which "official action" was the object of the charge? The

14

charge was a false one.

3.11 Despite counsel's possession of a copy of these filings, none were ever submitted onto the record, at sentencing or otherwise.

3.12 Aside from the willful error of law to which counsel's view of citizen's arrest as unlawful amounts, counsel's failure to investigate and to prepare a defense against the indictment, and to present at sentencing those parts of the Appellant's record that prove his innocence, the duress he endured, and the victim's conduct and the stress it caused him to suffer, show an utter disregard for the downward departures available to the Appellant under the 5K2 Rules.

3.13 "The Guidelines specifically provide for downward departures when victim misconduct "contributes significantly to provoking the offense behavior. Sec. 5K2.10. . . . The policy statement specifically instructs the district court to consider "any other relevant conduct by the victim that substantially contributed to the danger presented." Sec. 5K2.10(e). Moreover, it suggests that a departure may be warranted if the unlawful behavior follows an "extended course of provocation and harassment." Id." (See US v. Koon, 45 F.3d 1303, 1307 (CA9 1995)).

3.14 Aside from J.M.'s having never denied any of the multitude of criminal allegations Appellant has made since Aug. 4, 2009, the Appellant has had to endure false arrest, denial of bail, arrest and confinement of 45 days for being in the emergency room instead of in Kirkland's court, wrongfully doubled bail during those 45 days, denial of counsel for the month leading up to those 45 days and the first three weeks of

15

those 45 days, falsified police reports, and other abuses, while Kirkland admits in open court, in Dec. of 2001, that it has a baseless animus malus against him.

3.15 In Feb. 2002 Appellant was arrested in Kirkland at 10:30 pm for standing forty feet from a Kirkland cop who was screaming at and threatening a man he had on the ground under him, and two people trying that night to post Appellant's bail were lied to by Kirkland staff who stated that Appellant had been moved to King County Jail; that's kidnapping. The next day Appellant's bail was quintupled, and this trapped him in Kirkland's jail for eight days.

3.16 Kirkland has refused since Sept. 9, 2003 to hear Appellant's motion to vacate a criminal conviction in its court, and still refuses to lift the driver's license suspension it caused in July 2009 by mailing notice of hearing to the wrong address despite having Appellant's address since 2001 and his now 450+ pages of criminal complaints which seek to rectify this dereliction.

3.17 Appellant was falsely arrested by design on Aug. 10, 2010, his firearm was stolen by Kirkland police along with his auto's bill of sale and property inside his car, and all of it was sold at auction because Kirkland would not return his proof of ownership. (See Doc.#49, #54, Appellant's PSI and allocution letters to district court). Counsel's refusal to build the district court record and to argue on Appellant's behalf required that Appellant, in these letters, detail at length the situation Kirkland had created and its refusal to follow the law.

3.18 The suspension of Appellant's driver's license

16

Kirkland caused posed the threat of false arrest and imprisonment, and the impoundment of his car just for driving it. All of this transpired as Kirkland (J.M.) planned, and Appellant lost his car because Kirkland stole his bill of sale. (See RCW 46.55 no permission to confiscate bill of sale). The stress that all of this caused the Appellant to suffer was enormous and the duress is obvious. Section 5K2.12 (duress) may apply in those situations where a complete duress defense was not present. (See US v. Johnson, 956 F.2d 894, 898 (CA9 1992)).

3.19 The 9th Cir. has upheld a downward departure based on § 5K2.12 where government agents used persuasion alone to encourage criminal activity, and not threats or violence. (See US v. Takai, 941 F.2d 738 (CA9 1991); see also, US v. Garza-Juarez, 992 F.2d 1032, 1033-34 (CA9 1993) (four level departure for panic disorder and duress per § 5K2.12); US v. Gardner, 988 F.2d 82, 84 (CA9 1993); US v. Shrewsberry, 80 F.2d 1296, 1298 (CA9 1992); US v. Miller, 991 F.2d 552, 553 (CA9 1993); US v. Lipsey, 62 F.2d 1134 (CA9 1995) (downward departure for duress); US v. Koon, 833 F.Supp. 769, 786 (CA9 1993); US v. Mayweather, 431 F.3d 692 (CA9 2005); US v. Ameline, 409 F.3d 1073 (CA9 2005); US v. Lopez-Garcia, 316 F.3d 967 (CA9 2002); US v. Pizzichiello, 272 F.3d 1232 (CA9 2001); US v. Caperna, 251 F.3d 827 (CA9 2001); US v. Ramos-Oseguera, 120 F.3d 1028 (CA9 1996); US v. McClelland, 72 F.3d 717 (CA9 1996)).

3.20 The Appellee's arguments for enhancements were robust, while defense counsel offered no rebuttal of 5K2 arguments whatsoever, despite the Appellant's many encounters

17

with and efforts against Kirkland's and J.M.'s abuses which
began in September of 2001.

3.21 Counsel never investigated this history and never
intended to offer any arguments relating to 5K2 departures,
while documentary evidence of this past and this controversy
is appreciable voluminous and includes criminal complaints, a
civil action Appellant won against Kirkland ($15,055.00
judgment) for concealing documents in a criminal case, and a
civil action filed in Nov. 2009 which was not enough to
prevent this controversy.

3.22 Had counsel bothered to investigate and employ this
resource district court would have gotten a meaningful
snapshot of the caustic relationship with the Appellant that
Kirkland has intentionally fostered, and an understanding of
what he was experiencing when he threatened to share evidence
of J.M.'s municipal policies and crimes.

3.23 By comparing Appellant's sentencing memorandum with
his PSI and allocution letters it becomes clear that counsel
set aside the opportunity to investigate and exploit evidence
that downward departures would have been warranted per 5K2
Rules. Counsel's derelictions infected the presentencing
proceedings in district court, which would have turned out
differently if counsel had not been ineffective in this way.

2. Actual innocence:

A. Offending conduct (citizen's arrest) is not
prohibited.

3.24 In relation to J.M.'s (the subject felon) conduct

*18*

between Aug. 4, 2009 and Aug. 30, 2010 when the subject email was sent to J.M., Appellant filed with authorities 400+ pages of criminal complaints and exhibits in his attempt to keep City of Kirkland's derelictions from requiring a confrontation.

    3.25 J.M. has never refuted the felony and other accusations Appellant made in all of these which include but are not limited to:

18 USC § 241 Conspiracy against rights.

18 USC § 242 Deprivation of rights under color of law.

18 USC § 1341 Frauds and swindles. (mail fraud)

RCW 9A.40.040 Unlawful imprisonment.

RCW 9A.56.030 Theft in first degree.

RCW 9A.82.050 Trafficking in stolen property.

RCW 9A.82.060 Leading organized crime.

RCW 9A.56.310 Possessing a stolen firearm.

RCW 9A.40.020 Kidnapping.

RCW 9A.28.020 Criminal attempt.

RCW 9A.28.040 Criminal conspiracy.

"Under all the facts it is established to my satisfaction that the arrest was legal and the search was incident to it. This made the evidence admissible. Reasonable suspicion to believe that a felony has been committed and the arrested person committed it are sufficient to legalize the arrest even if made by private citizens."

See Jack v. Rhay, 366 F.2d 191 (CA9 1966) (citing Fernandez v.

19

Klinger, 346 F.2d 210, 211-12 (CA 1965); Elkanich v. US 327
F.2d 417 (CA9 1964), cert. den. 377 US 917; Ward v. US, 316
F.2d 113 (CA9 1963), cert. den. 375 US 862; Richardson v. US,
217 F.2d 696 (CA8 1964); US v. Coplon, 185 F.2d 629, 634, 28
A.L.R.2d 1041 (CA2 1960), cert. den. 342 US 920; Dorsey v. US,
174 F.2d 899 (CA5 1949), cert. den. 388 US 950 and 340 US 878;
and State v. McClung, 66 Wash.2d 654, 404 P.2d 460 (1965)).

RCW 9A.16.020 "Use of force - When lawful.- The use, attempt,
or offer to use force upon of toward the person of another is
not unlawful in the following cases:

    (1) whenever necessarily used by a public officer[.]

    (2) whenever necessarily used by a person arresting one
who has committed a felony and delivering him or her to a
public officer competent to receive him or her into custody.

    (3) whenever necessarily used by a party about to
injured, or by another lawfully aiding him or her, in
preventing or attempting to prevent an offense against his or
her person, or a malicious trespass, or other malicious
interference with real or personal property in his or her
possession, in case the force is not more than is necessary."

    3.26 In 1996 in Jack v. Rhay, Id., this Court concurred
with many other circuits as to the legality of the arrest of a
felon by a private citizen. The law (RCW 9A.16.020(2)) clearly
provides for such conduct in relation to any felon.

"This [NY statute § 183] in effect is declaratory of the
common law, which concededly permits a peace officer or

2c

private individual to arrest without a warrant where a felon has in fact been committed by the person arrested and the person making the arrest had probable cause for so believing. See Carroll v. US, 267 US 132, 45 S.Ct. 280, 69 L.Ed. 543, 30 A.L.R. 790; Brady v. US, 300 F. 540 (CA6 1924); Bishop, New Crim. Proc. (2d Ed.) at § 181."

See US v. Gowen, 40 F.2d 593, 596 (CA2 1930); see also US v. Lindenfield, 142 F.2d 829, 831 (CA2 1944) (citing Gowen, Id.).

3.27 In Gowen, Id. at 596, quoting the Supreme Court in Carroll v. US, 267 US at 161: "The necessity of probable cause in justifying seizures on land or sea, in making arrests without a warrant for past felonies, and in malicious prosecution and false imprisonment cases has led to frequent definition of the phrase. In Stacey v. Emerson, 97 US 642, 645, 24 L.Ed. 1035, a suit for damages for seizure by a collector, this court defined probable cause as follows: "If the facts and circumstances before the officer are such to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

3.28 The right of citizen's arrest extends to violations of federal law, and is governed by state law. (See Brady v. US, 300 F. 540 (CA6 1924); US v. Coplon, 185 F.2d 629 (CA2 1950); Richardson v. US, 217 F.2d 696 (CA8 1954); Ward v. US, 316 F.2d 113 (CA9 1963); Elkanich v. US, 327 F.2d 417 (CA9 1964); US v. Swarovski, 557 F.2d 40 (CA2 1977); Dorsey v. US, 174 F.2d 899 (CA5 1949)).

3.29 In Dorsey v. US, 174 F.2d 899 (CA5 1949), the Fifth

21

Circuit Court of Appeals stated: "There being no federal statute on the subject, the arrest in Florida for a federal offense is governed by Florida law. United State v. DiRe, 332 US 581, 68 S.Ct. 222, 92 L.Ed. 210. The Florida law is the common law, as modified by statute. . . . The common law authorizes a private person also to arrest for a felony committed in his presence; or, if a felony has been committed, and he has probable cause to believe and does believe the arrested person to be guilty. He can justify his not getting a warrant, though he had the opportunity, by proving the arrested person was actually guilty. 4 AmJur., Arrest, 35, 36, 37; C.J.S., Arrest § 8. See also US v. Gowen, 40 F.2d 593 (CA2), and Brady v. US, 300 F. 540, 541 (CA6)."

"The rule seems to be similar when an arrest is a so-called citizen's arrest, made by one not a law enforcement officer; i.e., it requires reasonable cause to believe the arrested party guilty of a felony before the arrest will support a search and seizure of evidence of crime. Information, belief, or suspicion as to commission of a felony, as jurisdiction for arrest by a private person without a warrant; 133 A.L.R. 608 (1941)."

See State v. Jack, 63 Wn.2d 632, 388 P.2d 566 (1964); see also State v. Darst, 65 Wn.2d 808, 811-12, 399 P.2d 618 (1965); State v. Williams, 27 Wn.App. 848, 621 P.2d 176 (1980); State v. Harp, 13 Wn.App. 239, 534 P.2d 842 (1975); State v. Clarke, 61 Wn.2d 138, 377 P.2d 449 (1962).

    3.30 In relation to citizen's arrest, a state may even

22

derogate to extend the right to apply to the arrest of one who has committed a mere misdemeanor.

"In Arizona, statutes that are in derogation of the common law are strictly construed. See Foundation Dev. Corp. v. Loehmann's, 163 Ariz. 438, 444, 788 P.2d 1189, 1195 (1990). In the case of misdemeanors such as shoplifting, there is no common law privilege of arrest. Gortarez v. Smitty's Super Valu, Inc., 140 Ariz. 97, 102, 680 P.2d 807, 812 (1984). A.R.S. § 13-1805 is in derogation of the common law because it allows private individuals to detain persons suspected of shoplifting. Therefore, A.R.S. § 13-1805 must be strictly construed to only permit detention of persons suspected of shoplifting."

See Shelburg v. City of Scottsdale, #CV-09-1800-PHX-NVW, USDC Arizona (8/23/2010).

    3.31 More recent decisions relating to citizen's arrest include: US v. Fullbright, 105 F.3d 443 (CA9 1995) in MT; US v. Grigg, 498 F.3d 1070 (CA9 2007) in OR; Tekle v. US, 457 F.3d 1088 (CA9 2005) in CA; Rhomberg v. Wilson, 108 F.3d 339 (CA9 1996) in CA; Collins v. Womancare, 878 F.2d 1145 (CA9 1989); Hopkins v. Bonvicino, 573 F.3d 752 (CA9 2008).

    3.32 If Appellant, himself, had actually performed the arrest of J.M.'s person, in interstate commerce or otherwise, he would have been entirely within his rights to do so. If his email had "threatened" such action he then, too, would be entirely within his rights to so "offer."

    3.33 When the Appellant intends to share evidence with

23

others inclined to so act "as provided by law" and informs the felon to be so arrested of his intentions, he is entirely within his rights to do so.

3.34 In this there is no "unlawful violence," and there is no first-person context, and there is no kidnapping or injury. Appellant has not offended 18 USC § 875(c) and is entitled to go free as a matter of law. Appellant's conviction should be reversed because he is innocent.

B. Appellant's email is protected speech.

3.35 Appellant was to share evidence of what he perceives to be felonious misconduct on the part of J.M. who received his Aug. 30, 2010 email. This is the only thing Appellant expressed an intent to do in the subject email message.

3.36 The plea agreement's factual allegation reflects this but only alludes to the result of this conduct and not to the conduct itself, e.g., "cause others to" make the arrest of J.M.'s person "by law."

3.37 "[I]incitement [of others] to injure or kill a presidential candidate does not qualify as an offense under [18 USC] § 879 (a)(3)." (See Bagdasarian, supra). The Appellee claims, through its prosecution of the Appellant, that inciting others to act "as provided by law" by merely sharing evidence of crime with them IS unlawful violence, when inciting others to kill a presidential candidate is not.

3.38 "Specific intent to threaten [to convey a "true threat"] is an essential element of a [18 USC] § 875(c) conviction." (See US v. Stewart, 420 F.3d 1001, 1018 (CA9

24

2005)). Such a threat must be a "true threat," which is an expression of an intent to "commit acts of unlawful violence against an individual or group of individuals." (Bagdasarian, supra. See also US v. Twine, 853 F.2d 676 (CA9 1988); US v. Sutcliffe, 505 F.3d 944 (CA9 2007)).

3.39 The unlawful violence so threatened must be that to be committed by the speaker of the threat himself, the threat must be made in first-person context:

"I will kill you" . . . I am now armed[.]"

See Sutcliffe, id. at 951. But in Bagdasarian the nature of threat was contextually third-person:

"[I]t does not convey the notion that Bagdasarian himself had plans to fulfill the prediction[.]"

"Neither does the . . . statement reflect the defendant's intent to threaten that he himself would kill or injure Obama."

"The statement makes no reference to Bagdasarian himself and so [it] cannot be reasonably be taken to express his intent to shoot Obama."

". . . fail to express an intent on his part to take any action . . ."

". . . is not sufficient to establish that he intended to

25

threaten Obama himself."

"As we have explained, supra at 9808-13, that neither of
Bagdasarian's statements on its face constitutes a true threat
unprotected by the First Amendment. Most significantly, one is
predictive and the other exhortatory. For the same reasons,
the evidence is not sufficient for any reasonable finder of
fact to have concluded beyond a reasonable doubt that
Bagdasarian intended his statements to be taken as threats.
See Jackson, 443 US at 319."

*End quotes of Bagdasarian.

     3.40 In 2003 a man (William Sheehan) in Seattle, WA
compiled personal information relating to public servants,
placing it in a database accessible through his web site,
JusticeFiles.org.

     3.41 City of Kirkland police personnel's personal
information posted there included their Social Security
numbers which were found on public record; Kirkland sued.
After King County Superior Court held that all information
from public record, with the exception of SS numbers, found
on the web site was protected speech, WA AG (Christine
Gregoire, now governor), and King County Prosecutor (Norm
Mehling, now deceased) coaxed the WA legislature into enacting
a Bill into law making it a misdemeanor to so publish such
information in correlation with the fact that those named were
public servants.

     3.42 As the Bill was signed into WA state law, the owner
of the database who published the information sued C. Gregoire

26

in US District Court, in Seattle, WA and succeeded in invalidating the new law on First Amendment grounds.

"[P]utting [certain individuals] in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct] protected by the First Amendment."

See Sheehan v. Gregoire, 272 F.Supp.2d 1135, 1149-50 (US Dist. Court WD. WA at Seattle 2003) (citing Planned Parenthood, 290 F.3d 1063).

    3.43 Appellant's statements in his email were merely informative and cautionary.

    3.44 FURTHER, considering that a citizen's arrest is legal, as briefed, supra, that such an arrest is the extent of the conduct alluded to in the subject email to J.M., and that the Appellee acknowledges this to be so as well as the fact that Appellant would not even be involved himself in any such conduct, Appellant's innocence is proven.

3. Actual innocence gateway is available to Appellant despite procedural default.

    3.45 A default on constitutional claims will be excused if an Appellant can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice, Coleman v. Thompson, 501 US 722, 750 (1991), which occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent" of the offense that is the subject of the barred claim. (See Murray v.

27

Carrier, 477 US 478, 496 (1986); Schlup v. Delo, 513 US 298, 324 (1995); House v. Bell, 547 US 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)).

3.46 An objective factor outside the defendant's control (e.g., ineffective counsel or a basis for the claim that was previously unavailable) could constitute cause. (See Murray, at 488; McClesky v. Zant, 499 US 467, 497 (1991)). A defendant can meet the prejudice prong if he demonstrates "that the errors . . . worked to his actual and substantial disadvantage, infecting the entire [proceeding] with errors of constitutional dimensions. (See White v. Lewis, 874 F.2d 599, 603 (CA9 1989) (citing US v. Frady, 456 US 152, 170 (1982)).

3.47 A defendant can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." (See Sawyer v. Whitley, 505 US 333, 339 (1992); Cooper v. Neven, 641 F.3d 322 (CA9 2010)).

3.48 Procedural default is overcome by a showing of actual innocence. (See Lee v. Lampert, 653 F.3d 929, 934-35 (CA9 March 3, 2011) ("It is difficult to imagine a stronger equitable claim for keeping open the courthouse doors than one of actual innocence, "the ultimate equity on the prisoner's side." Withrow v. Wilson, 506 US 680, 700 [] (1993). " . . . "We hold that a credible claim of actual innocence constitutes an equitable exception [this this statute], and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits. In recognizing an equitable exception based on a credible showing of actual innocence, we join three of our sister

28

circuits on an issue that has divided the court of appeals. (footnote omitted) See Souter v. Jones, 395 F.3d 577, 602 (CA6 2005); Lopez v. Trani, 628 F.3d 1228, 1230-31 (CA10 2010); San Martin v. McNeil, 633 F.3d 1257, 1267-68 (CA11 2011))."

3.49 In Menna v. New York, 423 US 61 (1975) cited supra, at fn.2: "The point of these cases (citing Tollett, 411 US 258 (1973); Brady, 397 US 742 (1970); and McMann, 307 US 759 (1970)) is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict the petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim."

3.50 Per Bagdasarian, 652 F.3d 1113, supra, citing Virginia v. Black, 538 US 343 (2003), to be guilty of having issued a true threat the Appellant has to have conveyed an expression of an intent to commit one or more acts of unlawful violence against an individual or group of individuals, so "it is [] not sufficient that objective observers would reasonable perceive such speech as a threat of injury or death."

3.51 In this case, the counseled guilty plea does not validly establish guilt under any standard other than the

erroneous definition of 'true threat' put in place by the
district court and the Appellee, on Feb 24, 2011, for the plea
agreement alleges no first-person threat, and no threat of
unlawful violence.

3.52 While Appellant did inform J.M. that others would
likely arrest her, which is not unlawful violence, he
personally intended only to share his evidence with others, as
he stated in the subject email. This is directly reflected in
the difference between the indictment and the plea agreement,
where allegations against the Appellant went from threatening
to"arrest" J.M. to Appellant 'threaten[ing] to cause others .
. . to "arrest" J.M. by law."

3.53 A showing of actual innocence renders a showing of
cause and prejudice unnecessary. (See Smith v. Baldwin, 466
F.3d 805, 812 (CA9 2005)). "A petitioner can overcome
procedural default and obtain federal review of the merits of
his claims by either demonstrating evidence of actual
innocence sufficient to bring the defendant within the "narrow
class of cases . . . implicating a fundamental miscarriage of
justice," Schlup, 513 US at 315 (quoting McClesky v. Zant,
499 US 494 []), or by making an adequate showing of cause and
prejudice," Strickler v. Greenam, 527 US 263 [] (1999); see
also Murray v. Carrier, 477 US 478 [] (1986)." (See Smith v.
Baldwin, Id.).

3.54 "Since there was "plain error," we may exercise our
discretion and reverse defendant's convictions if permitting
the convictions to stand would result in a miscarriage of
justice. See United States v. Olano, 597 US 725, 123 L.Ed.2d
508, 113 S.Ct. 1770 (1993)." (See US v. Fuchs, 218 F.3d 957,

30

963 (CA9 2000)).

    3.55 For this showing of actual innocence Appellant's
procedural defaults of issues raised herein should be excused
and the Schlup gateway should be opened for his claim to be
heard on the merits.

4. Indictment fails to state an offense, charge the Appellee
may not prosecute, subject matter and personal jurisdiction is
lacking ab initio.

    3.56 As briefed, supra, citizen's arrest is authorized
under RCW 9A.16.020(2), yet the indictment in this case points
only to such an "arrest" as the threatened conduct, and not to
any act that has been held by any court or other authority to
be "kidnapping" or "injury," or unlawful violence, at any time
leading up to this case. How could Appellant have known when
this is the first case of its kind?

    3.57 To further exacerbate the confusion caused by
Appellee's bald assertion that RCW 9A.16.020(2)'s operation is
unlawful violence, the plea agreement points at such an
"arrest" performed by others as unlawful violence on
Appellant's part if his disclosure of the public record to
others gives them reasonable suspicion to believe J.M. is a
felon, a belief already harbored by twenty four others. (Doc.
#30 Ex.1-4) from Feb. 24, 2011 pretrial detention hearing).

    3.58 When Appellee makes no distinction between the
"arrest" authorized by the statute's subsections (1) and (2),
and when it can point to no authority or precedent to support
its bald assertion, how can subsection (1) not also be viewed

31

in kind, as inoperative due to its classification as unlawful violence?

3.51 Appellee's interpretation and application of the charging statute to Appellant's conduct renders RCW 9A.16.020 inoperable, in violation of 28 USC § 1738 which requires state enactments to be paid full faith and credit. Where is WA state and municipal law enforcement personnel supposed to look for the authority to make an "arrest" now that the statute which is the source of such authority has been declared unlawful violence? (See Brooks v. City of Seattle, 599 F.3d 1018 (CA9 2009); W. Dist. of WA at Seattle cases: Wakagira v. City of Seattle, #08-1108-JLR (8/3/09); Martinez v. US, #08-265-JLR (8/3/09); John v. Berry, 469 F.Supp. 922 (2006); E. Dist. of WA at Spokane cases: Logan v. Weatherly, #CV-04-214-FVS (6/6/06); Logan v. City of Pullman Police Dept., #CV-04-214-FVS (6/13/06)).

3.59 The Appellee can tell the Court why an "arrest" under subsection (2) is unlawful violence, and why such an arrest under subsection (1) is not, for the purposes of the charging statute and precedent cited, supra.

3.60 Where an indictment fails to state an offense, the court lacks subject matter jurisdiction. (See US v. Broncheau, 597 F.2d 1260, 1262 n.1 (CA9 1979)). Because an indictment is jurisdictional, the defect is not waived by a guilty plea. (See US v. Navarro, 959 F.Supp. 1273 (CA9 1977); US v. Ratigan, 351 F.3d 957 (CA9 2003); US v. Berrios-Centeno, 250 F.3D 294, 296 (CA5 2001) (citing US v. Cabrerra-Teran, 168 F.3d 141, 143 (CA5 1999), and US v. Marshall, 910 F.2d 1241, 1243 (CA5 1990)), and challenges are reviewed de novo. (See US

West v. Nelson, 146 F.3d 718 (CA9 1988)). The court will dismiss an action on appeal if jurisdiction is lacking. (See Attorneys Trust v. Videotape Computer Products, 93 F.3d 593 (CA9 1996)). In the absence of subject matter or personal jurisdiction, the judgment rendered is null and void. (See US v. DeMott, #CR00-79-SL-EJL, and #CV04-347-S-EJL, US Dist. Court Idaho, Feb. 22, 2007)).

3.61 Federal courts are obliged to examine their own jurisdiction and cannot entertain an action where jurisdiction is lacking. (See Hernandez v. Campbell, 204 F.3d 861 (CA9 1999)). A defendant need not show prejudice if jurisdiction lacking. (See US v. Mendoza, 957 F.Supp. 1155 (CA9 1997)).

3.62 A federal court is required to determine jurisdiction sua sponte. (See City of Kenosha v. Bruno, 412 US 507, 511, 37 L.Ed.2d 109, 93 S.Ct. 2222 (1973); Washington Local v. International Brotherhood of Boilermakers, 621 F.2d 1032, 1033 (CA9 1980); Hoohi v. Ariyoshi, 741 F.2d 1169 (CA9 1984); Arizona Life v. Stanton, 515 F.3d 956, 962 (CA9 2008)). A court must determine whether jurisdiction exists pursuant to Article III of the U.S. Constitution, and it must dismiss an action if jurisdiction is lacking. (See Timbisha Shoshone Tribe v. Kennedy, 687 F.Supp.2d 1171 (CA9 2009); Fleck & Assoc. v. City of Phoenix, 471 F.3d 1100 (CA9 2006)). The burden of proving jurisdiction is upon the party asserting it. (See Sissoko v. Rocha, 412 F.3d 1021 (CA9 2004)). Because jurisdiction goes to the power of the court to act, jurisdictional defects cannot be waived and, for the same reason, are not subject to harmless error analysis. (See US v. Navarro, 959 F.Supp. 1273 (CA9 1977)' US v. Ratigan, 351 F.3d

33

957 (CA9 2003)).

3.63 A "[S]pecific intent to threaten [unlawful violence]
is an essential element of a [18 USC] § 875(c) conviction."
(See US v. Stewart, 420 F.3d 1001, 1018 (CA9 2005)). A four-
corners assessment of the indictment in this case reveals only
that it seeks to criminalize conduct authorized by the common
law and by RCW 9A.16.020. (Four-corners discussion, see: US v.
Jensen, 93 F.3d 667, 669 (CA9 1996); US v. Caicedo, 47 F.3d
370, 371 (CA9 1995); US v. Buckley, 689 F.2d 893, 897 (CA9
1982); US v. Thordarson, 646 F.2d 1323, 1337 n.25 (CA9 1981)).


3.64 A claim of defective indictment may be made at any
time. (See US v. James, 980 F.2d 1314, 1316 (CA9 1992)).
Jurisdictional defects can include the unconstitutionality of
the charging statute as applied to a criminal defendant's
conduct. (See US v. Mercer, 133 F.Supp. 288, 291 (CA9 1955);
US v. Caperell, 938 F.2d 975, 977 (CA9 1991) (citing US v.
Montilla, 870 F.2d 549 (CA9 1989) amended at 907 F.2d 115
(CA9 1990). See also: Bond v. US, 131 S.Ct. 2355, 180 L.Ed.2d
269, USSC #09-1227 (June 16, 2011), J. Ginsburg, concurring
opinion).

3.65 Inasmuch as the indictment seeks to criminalize
conduct clearly established as permissible, expression that is
protected speech, and does so in a manner that is exceedingly
vague, the indictment fails to state an offense, or it brings
a charge the Appellee may not prosecute in the first place.
(See Cortez, and Menna, infra at ¶ 3.87).

3.66 Therefore, subject matter and personal jurisdiction
is lacking and Appellant's conviction must be reversed.

34

5. Appellant's sentence is illegal and unconstitutional.

A. Appellant's sentence violates 18 USC § 3553, case is outside of Guideline heartland rendering sentence unreasonable, impermissible disparity.

3.67 In relation to disparity of sentencing it is of note that defense counsel declined reflection upon US v. Sutcliffe, supra, to point out that at trial Sutcliffe was convicted of three counts under 18 USC § 875(c) and five counts for aiding and abetting identity theft, and was sentenced to 46 months. In Comparison, Appellant pled guilty to one count under 18 USC § 875(c) and was sentenced to 40 months. This points not only to disparity but also to ineffective counsel.

3.68 The two cases cited in Appellant's sentencing memorandum (USDC A.Dist. WA at Seattle: US v. Wilson, #CR10-130-JCC, and US v. Habermann, CR11-029-JLR) show how, in the instance of overt death threats against U.S. Congressmen and their families, sentences of 1 yr. and 8 mos. respectively are warranted, but Appellant's sentence for merely threatening to share or disclose to others the public record is 40 months.

3.69 The district court points to Appellant's intent to actually share his evidence of J.M.'s crimes with others as justification for this disparity, whereas Wilson and Habermann purportedly lacked intent. To begin its sentencing calculations the district court equated Appellant's threatened disclosure of the public record with the overt death threats made by Wilson and by Habermann, making upward enhancements

35

from that foundation.

    3.70 Several very recent cases dealing with convictions under threat statutes expose Appellant's sentence as exceedingly harsh. Wilson and Habermann were sentenced to approx. 10% of the max. under their charging statutes which carry possible 10 yrs. in prison, whereas Appellant was sentenced to 66% of the max. carried by his charging statute which is 5 yrs.. Wilson and Habermann threatened Congressmen with death to influence national policy, while Appellant was only going to share evidence against one who stole his car and sold it at auction.

1. US v. Wilson, #CR-10-130-JCC, in 2011, US Dist. Court W.D. of WA at Seattle: Charles Wilson pled guilty to one count under 18 USC § 115(a)(1)(B) & (b)(4), which carries a max. of ten years, after leaving on Senator Patty Murray's voice mail death threats containing vulgar anatomical references and other foul language. These threats were intended to influence the Senator's votes and political position on the issue of health care reform. The plea agreement identified FIFTEEN DIFFERENT THREATS to kill the Senator. Wilson was sentenced to 12 months in custody.

2. US v. Habermann, #CR-11-029-JLR, in 2011, US Dist. Court W.D. of WA at Seattle: Chalres Habermann pled guilty to one count under 18 USC § 115(a)(1)(B) & (b)(4), which carries a max. of ten years, after leaving on Representative James McDermott's voice mail death threats to kill him, his family and friends, with disparaging remarks as to sexual

36

orientation, foul language, and was intended to influence his votes and political position on tax reform and unemployment benefits. Habermann admitted to leaving threats with another member of Congress and with a member of the California State Assembly.

Habermann was sentenced to only 8 mos. in custody for his overt death threats against an entire family.


3. US v. Young, #CR-11-128-RSL, in 2011, US Dist. Court W.D. of WA at Seattle: Michelle Young sent letters to the President of the United States, and to King County Sheriff's offices in Seattle and Kent, WA, each containing a white powder said to be "anthrax."

Young pled guilty to one count of "Conveying false or misleading information" in violation of 18 USC § 1038(a)(1) and the gov't recommended a sentence of only 8 mos. (time served).


4. US v. Sutcliffe, 505 F.3d 944 (CA9 2007): At trial Sutcliffe was convicted of three counts under 18 USC § 875(c) (same charging statute as this case), and five counts of aiding and abetting identity theft under 18 USC § 1028(a)(7). Sutcliffe posted online threats against a process server who had served him with a T.R.O. obtained by somebody else; "I will personally send you back to the hell from which you came. . . I will kill you." Another post to another individual said, "Keep your dogs @ bay . . . I am now armed."

Sutcliffe was convicted on all eight counts at trial and sentenced to only 46 months.

37

5. US v. Twine, 853 F.2d 676 (CA9 1987): James Twine was convicted in a bench trial of seven counts under 18 USC § 875(c) (same as this case). Upon conviction Twine was sentenced to only 60 months in prison.

    3.71 Appellant sought to share the public record with others, he would not have been involved in any "arrest," he was attempting to influence nothing, he cautioned against resistance of any such "arrest" to prevent injury to all concerned, and he was sentenced to 40 months in a case which is the first of its kind, which finds utterly no support in any prior instance anywhere.

    3.72 Here, the nature and circumstances of the Appellant's offense, and disparity of sentencing, as addressed by 18 USC § 3553, were ignored, resulting in unreasonable and illegal sentencing and treatment in kind for an offense wholly lacking the severity manifest in the crimes of those cases cited above.

    3.73 Sentencing guidelines are defeated when a sentencing court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." (See United States v. Morales-Uribe, 470 F.3d 1282, 1286 (CA8 2006)).

    3.74 While defense counsel's refusal to argue for 5K2 departures can be blamed, in large part, the district erred by

38

failing to reasonably consider § 3553 requirements relating to sentencing and to fairness.

"A just legal system seeks not only to treat different cases differently bot also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences. Indeed, when Congress enacted the sentencing statutes before us, it focused upon the unfair way in which federal sentencing failed to treat similar offenders similarly. And Congress wrote statutes designed primarily (though not exclusively) to bring about greater uniformity in sentencing. See, e.g., Booker, supra, at 253-54, 125 S.Ct. 738, 160 L.Ed.2d 621. The statutes do so in large part through the creation of a system of Guidelines written by the Sentencing Commission, which Congress intended the courts to follow. See Mistretta v. US, 488 US 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (Sentencing Commission constitutional); Rita v. US, 551 US 338, 348-49, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); 18 USC § 3553(a) (identifying relevant factors in sentencing, including uniformity)."

See Pepper v. US, 526 US __, 131 S.Ct. __, 179 L.Ed.2d 196, 226 (2011).

"Moreover, Booker held that appellate court review of sentencing is valid. Booker explained that the "statutory language, the structure of the [Sentencing Reform Act], and the sound administration of justice," taken together, require appellate courts to apply "reasonable standards of review."

39

Id. at 260-61, 262, 125 S.Ct. 738, 160 L.Ed.2d 621.
Reasonableness standards, we added, are "not foreign to
sentencing law." Id. at 262[.] And the "Act has long required
their use in important sentencing circumstances-both on review
of departures . . . and on review of sentences imposed where
there was no applicable Guideline."

See Pepper, Id. at 227, quoting Booker.

3.75 The case of threatened sharing of public record is
certainly outside the 'heartland' of cases the Guidelines were
crafted to address, but the district court failed to treat the
Appellant any differently from those who make overt death
threats against entire families, then enhanced that threshold
astronomically upward. Pepper, Id. at 227; see also Gall v.
US, 552 US 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).

3.76 District court's failure to consider a definite lack
of severity, and its failure to consider § 3553's prohibition
against disparity and requirement to consider the nature and
circumstances of the offense (sharing documents on public
record) have resulted in an unreasonably excessive sentence of
40 months. This violation of § 3553 renders Appellant's
sentence illegal, requiring resentencing.

B. Sentence is unconstitutional - 1st, 5th, and 8th
Amendments.

3.77 Appellant's crime is that of having threatened to
share evidence of crime already on public record, criminal
misconduct committed against him by J.M. and her associates,

40

after originally being charged with threatening to make a citizen's arrest as provided by law. Not only is this the first case of its kind, but the nature of the offense would not have led to or entailed the infliction of physical injury in any form upon anyone.

"In order to pass muster under the Eighth Amendment, "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." Solem v. Helm, 463 US 277, 290, 77 L.Ed.2d 637, 103 S.Ct. 3001 (1983). However, "a sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity of the crime' as to shock our sense of justice." United States v. Vega-Mejia, 611 F.2d 751, 753 (CA9 1979) (citing United States v. Washington, 578 F.2d 256, 258-59 (CA9 1978))."

See US v. Cupa-Guillen, 34 F.3d 860, 864 (CA9 1994).

    3.78 The sentence in this case is precisely of such a variety and nature. When we live in the age of information, when hundreds of millions of people around the world pass information to one another and to the entire world via the internet, and while "no man is so high that he is above the law" is a standard still said to rule America, the Appellant is sentenced to 40 months in prison for stating his intent to share documents of the public record.

"To say, as Judge Trott, that there is simply no legal question here is to denigrate the Constitution. It is to say

41

that the police, unlike all others, are above the law - that
their decisions as to how and when deadly force shall be used
are immune from judicial review. That way lies the beginning
of the police state and the end of freedom."

See Chew v. gates, 27 F.3d 1432 (CA9 1992).

   3.79 When compared to Wilson's and Habermann's sentences
of a year or less, Appellant's sentence shocks the conscience,
and stands out as cruel and unusual punishment, in violation
of the 8th Amdt. to the Constitution, and it cannot stand.

   3.80 FURTHER, the charging statute is void for vagueness,
infra, rendering Appellant's sentence a violation of the 5th
Amdt..

   3.81 FURTHER, the charge is one the Appellee may not
bring due to its chilling effect on 1st Amdt. freedoms, and
for the fact that the conduct of the Appellant does not meet
the definition of "true threat" as required under 18 USC §
875(c), so any sentence would violate the 5th Amdt. as
briefed, infra.

   3.82 Appellant's sentence violates § 3553 and is outside
the range contemplated by the Guidelines which must be
tempered by § 3553, and it is unconstitutional. Appellant is
entitled to be released or to be resentenced to a reasonable
duration of confinement.

6. Appeal waiver is unenforceable.

   3.83 Appellant's plea agreement reserves rights to appeal
on grounds of ineffective counsel and of treatment of terms of

4/2

confinement on the part of the Federal Bureau of Prisons.

3.84 "[A]n appeal waiver will not apply if: (1) defendant's guilty plea failed to comply with Fed.R.Crim.P. 11; (2) the sentencing judge informs the defendant that she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence violates the law." (See US v. Tsosie, 639 F.3d 1213 (CA9 3/6/11) (citing US v. Watson, 582 F.3d 974, 987 (CA9 2009), quoting US v. Bibler, 495 F.3d 621, 624 (CA9 2007)). Review of waiver is de novo. (See Tsosie, id.).

3.85 "A sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." (See Bibler, id.; see also US v. Fowler, 794 F.2d 1446, 1449 (CA9 1986) (citing Pinedo v. US, 347 F.2d 142, 148 (CA9 1965), cert. den. 382 US 976 (1966); Hill v. US, 358 US 424, 430 (1962); US v. Ames, 743 F.2d 46, 47 (CA1 1984), cert. den. 469 US 1165 (1985); US v. Becker, 536 F.2d 471, 473 (CA1 1976); US v. Mack, 494 F.2d 1204, 1207 (CA9 1974); Wright & Miller Practice & Procedure § 582 at pg.381).

3.86 "A district court by definition abuses its discretion when it makes an error of law." (See Koon v. US, 518 US 81, 100 (1996) (Rodney King beating defendant); Strauss v. Comm'r, 635 F.3d 1135, 1137 (CA9 2011) (citing Koon, id.)). Error is plain where it is "clear and obvious." (See US v. Recio, 371 F.3d 1093, 1100 (CA9 2004) (quoting US v. Fuchs, 218 F.3d 957, 962 (CA9 2000)).

3.87 "A plea of guilty does not waive a claim that the charge is one which the government constitutionally may not prosecute." (See US v. Cortez, 973 F.2d 764, 766-67 (CA9 1992)

43

(citing Menna v. New York, 423 US 61, 62 (1975), and Blackledge v. Perry, 417 US 20, 21 (1974)). "The exception is derived from the fact that even though the guilty removes the question of the defendant's guilt from the case, the issue of whether the government had the power to bring the charge at all still remains." (See Cortez at 767, citing Menna at 62).

3.88 Appellant's expression of his intent to ask others if they think J.M. is a felon is protected speech, and a citizen's arrest by others who acquire a reasonable suspicion that J.M. is in fact a felon is provided for by law. To punish a person for doing what the law plainly permits is a due process violation of the most basic sort. (See Bordenkicher v. Hayes, 434 US 357, 363 (1978); US v. Goodwin, 457 US 368, 372 (1982); US v. Tarallo, 380 F.3d 1174, 1194 (CA9 2004); Nulph v. Cook, 333 F.3d 1052, 1056 (CA9 2002); White v. Ford Motor Co., 312 F.3d 998, 1019-20 (CA9 2000); US v. Murphy, 65 F.3d 758, 762 (CA9 1995)).

3.89 Appellant's sentence is illegal, as briefed, supra, and seeks to punish conduct the plainly permits, which renders Appellant's appeal waiver unenforceable.

7. Charging statute is void for vagueness as applied to Appellant's conduct.

3.90 Appellant's conviction is under a statute that prohibits the making of a threat to "kidnap or injure" the person of another via interstate means, and the subject email spoke only of an "arrest," the the right to do so being clearly established law. Nothing in the statute (18 USC §

44

875(c) clarifies for a reader that conduct permissible under the common law and under WA state law (RCW 9A.16.020) is prohibited thereunder.

3.91 "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." (See US v. Williams, 553 US 285, 128 S.Ct. 1830, 1845 (2008)). "Vague statutes are invalidated for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on First Amendment freedoms." (See Humanitarian Law Project v. Mukasey, 552 F.3d 916, 928 (CA9 2009) (quoting Foti v. City of Menlo Park, 146 F.3d 629, 638 (CA9 1998); see also US v. Purdy, 264 F.3d 809, 811 (CA9 2001)).

3.92 A statute is unconstitutionally vague on its face if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." (See Williams, supra, at 1845).

3.93 "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to know what the State commands or forbids." (See Lanzetta v. New Jersey, 306 US 451, 453 (1939)). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential element of due process of law."

45

(See Connally v. General Const. Co., 269 US 385, 391 (1926)).

3.94 The instant case is the first of its kind when it holds that sharing public record, or that making a citizen's arrest "by law," is unlawful violence. These acts are the acts to which the Appellant alluded in the subject email. By comparing the Appellants indictment to his plea agreement the Appellee is exposed as having sought to criminalize both.

3.95 Compare this to Bagdasarian's failure to utter a true threat when predicting and exhorting others to injure or kill a presidential candidate. With the understanding that sharing information is protected speech, (Sheehan v. Gregoire, 272 F.Supp.2d 1135, 1149-50 (W.D. WA 2003) (citing Planned Parenthood, 290 F.3d at 1063, "[P]utting [certain individuals] in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct] protected by the First Amendment."), the charging statute's prohibition of such renders it void for vagueness for its chilling effect on such expression.

3.96 FURTHER, for the simple fact that WA state law permits the Appellant's conduct, either the RCW 9A.16.020 "offer" to use force to arrest any felon or the sharing of information with others, which would lead any individual to believe that it would not offend federal law to do so, or to mention such conduct in interstate commerce, the charging statute is facially void for its failure to clearly define or identify conduct which could offend its letter.

3.97 This lack of clarity gives the Appellee a reach which can only be described as overbreadth. Who can and cannot

46

share information on the public record, or which acts in self
defense ARE permitted by law, or which law does and which does
not offend federal criminal statutes? Which information from
the public record is prohibited and which is not? Is sharing
the public record unlawful violence? What law does sharing
information violate?

3.98 The arbitrary and discriminatory enforcement to be
unleashed under Appellee's interpretation and application of
the charging statute places all property and liberty in peril.
For its failure to provide notice of offending conduct and for
overbreadth the charging statute is void for vagueness.
Appellant's conviction must be reversed for a lack of subject
matter jurisdiction.

8. A plea agreement cannot bar Schlup gateway access.

3.99 Appointed appellate counsel has expressed pessimism
and apprehension due to the fact that Appellant has entered
into a plea agreement, but has not commented on how, when it
fails to state an offense, it can bind the Appellant to the
sentence he received in district court. The Appellant is not
dissuaded in the least.

3.100 Appellant sees this view of the plea agreement as a
failure or inability to view it in light of a lack of in
personam jurisdiction, and perhaps even subject matter
jurisdiction. A plea agreement is a contract and is enforced
as such. (See US v. Allen, 434 F.3d 1166, 1174 (CA9 2005)
(citing US v. Mondragon, 228 F.3d 978, 980 (CA9 2000), and US
v. Johnson, 187 F.3d 1129, 1134 (CA9 1999)).

47

3.101 However, in the absence of subject matter or
personal jurisdiction, the judgment rendered is null and void.
(See US v. DeMott, #CR00-79-SL-EJL, and #CV04-347-S-EJL, US
Dist. Court Idaho, Feb. 22, 2007); see also, Hull v.
Rothhammer Int'l, Inc. #C-05-03538-WHA USDC N.D. California
(April 13, 2006) ("This accords with the long-standing and
basic principle that subject-matter jurisdiction cannot be
conferred upon a court by consent of the parties." (citing
Merrill v. Petty, 83 US 338, 346, 21 L.ed. 499 (1872)). How
can a plea agreement validate a judgment that is null and
void?

"The defense of lack of subject matter jurisdiction cannot be
waived," Augustine v. United States, 704 F.2d 1074, 1077 (CA9
1983), and may "be raised at any time during the proceedings,"
United States v. Bennett, 147 F.3d 912, 914 (CA9 1998)
(internal quotations omitted). Furthermore, because federal
courts possess "only power that is authorized by Article III
of the Constitution, and the statutes enacted by Congress
pursuant thereto[.] . . . every federal appellate court has a
special obligation to satisfy itself not only of its own
jurisdiction, but also that of lower courts in a cause under
review," even if it is not contested by the parties. Bender v.
Williamsport Area Sch. Dist., 475 US 534, 541 106 S.Ct. 1326,
89 L.ed.2d 501 (1986)."

See Hansen v. Dept. of Treasury, 528 F.3d 597, 600 (CA9 2007);
see also, Kuntz v. Lamar Corp., 385 F.3d 1177, 1180 (CA9 2004)
(citing US v. Cotton, 535 US 625, 630, 122 S.Ct. 1781, 152

48

L.Ed.2d 860 (2002)).

3.102 In US v. Ceja-Prado, 333 F.3d 1046 (CA9 2003), this Court held that jurisdictional questions were a primary concern, determining merits of a new claim despite a plea agreement. "We have repeatedly recognized that federal jurisdiction cannot be created by the parties through waiver or estoppel, in cases in which jurisdiction otherwise does not exist. It is clear, for example, that this court has a continuing obligation to assess its own subject-matter jurisdiction, even if the issue is neglected by the parties entirely or raised for the first time on appeal. See Dittman v. California, 191 F.3d 1020, 1025 (CA9 1999) ("We have an independent obligation to address sua sponte whether this count has subject-matter jurisdiction."); see also In re Sealed Case, 327 US.App.DC. 358, 131 F.3d 208, 210 (D.C.Cir. 1997)[.]"). Similarly, courts have not allowed jurisdiction to depend on either malfeasance or well-intentioned agreement of the parties.. See e.g., Steel Co. v. Citizens for a Better Env't, 523 US 83, 95, 140 L.Ed.2d 210, 118 S.Ct. 1003 (1998)[.] . . . When it appears that the facts may establish that the court has no jurisdiction to hear a case, we have recognized that we will not permit a party's improper conduct to interfere with our own obligation to acknowledge those facts." (See Ceja-Prado, Id. at 1049-50).

3.103 "Nothing is to be more jealously guarded by a court than its jurisdiction. Jurisdiction is what its power rests upon. Without jurisdiction there is nothing. In re Mooney, 841 F.2d 1003, 1006 (CA9 1988), overruled on other grounds by Pari ngton v. Gedan, 923 F.2d 868 (CA9 1991) (en banc)." (See Ceja-

49

Prado, Id. at 1051).

3.104 When statute does not reach the conduct allegedly constituting the offense with which Appellant is charged, what is the source of the power that binds Appellant to the sentence in this case?

3.105 Will Appellee prove in personam jurisdiction by showing that its application of the charging statute to the act of "threatening" to present evidence and testimony to others is valid, or will the Appellee argue that contract alone is enough to bind the innocent Appellant to his sentence? If the latter, is it from Congress or from Article III that Appellant's plea agreement springs?

3.106 Subject matter jurisdiction is established only after Appellant's void for vagueness challenge (constitutionality of statute as applied to offending conduct) and insufficient indictment challenge (failure to state an offense) are ruled invalid. In personam jurisdiction is proven only when sharing with others documents which are on public record is held to be unlawful violence.

3.107 Can the Appellant confer upon this Court Constitutional and statutory authority via the plea agreement? Can a mere contract overpower or set aside a credible showing of actual innocence? Does a contract suffice to close the courthouse doors to an innocent prisoner?

3.108 "Specifically, defendant admits to threatening" to sit in a restaurant "to cause others to" serve him a glass of water "by law." When charged with a crime for having done so he signed a plea agreement, so he sits in prison and there's nothing anyone can do for him, in America. The conduct would

50

have been legal if only he had not emailed the threat to
behave in such a way.

"Whatever the claim, success on the merits would require
reversal of the conviction. "An offense created by [an
unconstitutional law]," the Court has held, "is not a crime."
Ex parte Seibold, 100 US 371, 376, 25 L.Ed. 717 (1880). "A
conviction under [such a law] is not merely erroneous, but is
illegal and void, and cannot be a legal cause of
imprisonment." Id., at 376-77, 25 L.Ed. 717. If a law is
invalid as applied to the criminal defendant's conduct, the
defendant is entitled to go free. . . . For this reason, a
court has no "prudential" license to decline to consider
whether a statute under which the defendant has been charged
lacks constitutional application to her conduct."

See Bond v. US, 131 S.Ct. 2355, 180 L.Ed.2d 269 (June 16,
2011), J., Ginsburg concurring opinion.

    3.109 Until such time as the term "true threat" is proven
by precedent to embrace sharing documents on public record
with others, until it's shown to include an RCW 9A.16.020
"arrest," the glass of water analogy is as accurate as the
facts of this case when compared to the charging statute. The
plea agreement says that the Appellant threatened to do
something legal to cause others to do what the law permits.

    3.110 Until such time as Appellant can be shown to have
issued a true threat, a threat to commit acts of unlawful
violence, in personam jurisdiction is lacking, a fortiori,
contract alone must be said to give the Court the authority to

sustain his conviction and sentence if the plea agreement bars relief on an actual innocence claim. Appellant's plea agreement does not bar his access to the Schlup gateway (briefed, supra) relating to his claims of actual innocence made herein.

9. Appellee breached the plea agreement at sentencing, Appellant should be resentenced by different judge.

3.111 Appellant's July 27, 2011 plea agreement provides that the government will recommend no more than 48 months as the appropriate sentence for Appellant's alleged offense.

3.112 However, in Appellee's sentencing memorandum (Nov. 2011) and at sentencing (Dec. 2, 2011) counsel for Appellee, Vince T. Lombardi, informed the district court that he felt a longer sentence was appropriate:

Court: "So bottom line, in terms of the calculation of the range, even though we're talking about a sixty month maximum."

Prosecution: "Right."

Court: "You believe it works out to a total offense level 27, 70 to 87 months?"

Prosecution: "Correct. And we are nonetheless recommending 48 months, because that's what we committed to do in the plea agreement."

52

See Doc. #55 p.11, Dec. 2, 2011 sentencing hearing transcript appended to appointed counsel's Anders motion on file in this Court, pg.11 ln.9-17, compare Appellee's sentencing memorandum at Doc. #50 pg.11 ln.21-25.

3.113 When a plea agreement states that the government will recommend no higher than a certain length of a sentence but later states an opinion to the court that such a sentence is lower than is appropriate, a sentence is to be vacated and the criminal defendant resentenced.

"Because the prosecutor's comments did not provide the district judge with any new information or correct any factual inaccuracies, the comments could have been made for only one purpose: to influence the district court to impose a harsher sentence than that suggested by appellant's counsel. This attempt by the government to influence the district court constitutes a "recommendation regarding sentencing," (fn. omitted) conduct specifically prohibited by the plea agreement. We note that this means more than just recommending a specific sentence. . . . It is of no consequence that the district judge did not construe the prosecutor's statements as a "comment on the sentence" or a "recommendation with respect to sentencing," or that the statements may have had no effect upon the sentence."

"Considering the government's breach of the plea agreement, we vacate appellant's sentence and remand for resentencing."

53

See US v. Mondragon, 228 F.3d 978 (CA9 2000).

3.114 Due to Appellee's breach of the plea agreement with the Appellant, his sentence should be vacated and he should be resentenced.

## IV. CONCLUSION & VERIFICATION.

4.1 WHEREFORE, Appellant requests that this court reverse his conviction for the reasons stated herein. While Appellant is factually guilty under a standard articulated in his plea agreement, that standard is in conflict with precedent. Appellee expects this court to ignore Bagdasarian and other authorities cited herein to keep Appellant in prison. While probable cause was lacking ab initio, Appellant's home was raided twice and he's been confined since Jan. 25, 2011.

4.2 The Appellee's burden is clear and is simple enough. Where is the first-person threat, what is the unlawful violence threatened, and what is the likelihood that the individual of average intelligence would understand by reading the charging statute that both sharing public record and a citizen's arrest as permitted by RCW 9A.16.020 is unlawful violence?

4.3 Appellee's application of the charging statute, in this case, is as reckless as it is arbitrary and discriminatory, directed at one particular speaker to silence protected expression it finds objectionable.

4.4 Counsel's refusal to acknowledge citizen's arrest of a felon as lawful prejudiced the Appellant throughout the proceedings and was used to justify ignoring victim's conduct,

54

duress, and Appellant's history of victimization under City of
Kirkland's policies. Counsel failed to investigate and to
present mitigating evidence to lessen Appellant's sentence
despite the sheer volume of such that was readily accessible,
which falls far short of ABA Standards for Criminal Defense.

4.5 Appellant's sentence is exposed as unreasonable by a
comparison to cases decided within only months of his own Dec.
2, 2011 sentencing. His offense (threatening to share evidence
of crime) pales in comparison to say the least, yet he
suffered the imposition of a sentence several times longer
than those making overt death threats, fifteen of them,
against Congressmen and their families.

4.6 Appellant is innocent, and he has confidence in this
system that it can accommodate and relieve him despite the
procedural bars to which his waiver(s) and plea agreement may
otherwise amount. His showing of innocence is borne of law,
precedent, and Appellee's own acquiescence to the true facts.
To allow Appellant's conviction to stand would result in a
fundamental miscarriage of justice.

4.7 I, David R. Myrland, do hereby declare under
penalties of perjury (28 USC § 1746) that the foregoing
statements, and the statements in my PSI and allocution
letters filed prior to sentencing, are true and correct to the
best of my knowledge and belief. Executed this _6th_ day of
July, 2012.

David R. Myrland, Affiant

55

UNITED STATES COURT OF APPEALS

IN AND FOR THE NINTH CIRCUIT

At San Francisco, CA

UNITED STATES,          ) No. 11-30351

   Plaintiff-Appellee,  ) USDC #2:11-cr-0057-RSM

                    ) W.D. of WA at Seattle, WA.

       vs.          ) APPELLANT'S TABLE OF CONTENTS

                    ) and AUTHORITIES for

David R. Myrland,       ) Supplemental Memorandum.

  Defendant-Appellant. )

———————————————————

CONTENTS:

Table of contents and authorities ............ (ii)-(ix)

Introduction ............................. 1-9

Assignment of errors ................... 9-10

Issues presented  ...................... 10-11

Briefed issues ......................... 11-54

    1. Ineffective counsel .............. 11-18

    2. Actual innocence ................. 18-27

    3. Schlup gateway .................. 27-31

    4. Indictment insufficiency ........ 31-34

    5. Illegal/unconstitutional sentence .. 35-42

    6. Appeal waiver does not apply ...... 42-44

7. Void for vagueness ................ 44-47

8. Plea agreement does not bar relief ...47-52

9. Breach of plea agreement .......... 52-54


Conclusion ................................ 54-55

## - TABLE OF AUTHORITIES -

WA state statutes:

RCW 9A.16.020 ............. 4, 6, 8, 9, 20, 31, 54,

RCW 9A.40.040 ......................... 19,

RCW 9A.28.020 ......................... 19,

RCW 9A.28.040 ......................... 19,

RCW 9A.40.020 ......................... 19,

RCW 9A.56.030 ......................... 19,

RCW 9A.56.310 ......................... 19,

RCW 9A.82.050 ......................... 19,

RCW 9A.82.060 ......................... 19,

RCW 46.55 (chapter) ................... 17,


Federal statutes:

18 USC § 241, 242 .............. 17,

18 USC § 875 ................. 1, 4, 8, 24, 35, 42, 44, 18

USC § 1341 ..................... 17,

18 USC § 3553 ................. 4, 10-11, 35, 40, 42,

28 USC § 1738 ................. 32,


US Constitution:

1st Amdt. .......................... 7, 42,

⟨ii⟩

5th Amdt. .......................... 7, 42,

6th Amdt. .......................... 11,

8th Amdt. .......................... 4, 42,

Article III ....................... 33, 50,


WA state cases:

State v. Clarke, 377 P.2d 449 (1962) ....... 22,

State v. Darst, 399 P.2d 618 (1965) ........ 22,

State v. Harp, 534 P.2d 842 (1975) ......... 22,

State v. Jack, 388 P.2d 566 (1964) ......... 22,

State v. Williams, 621 P.2d 176 (1980) ....... 22,


Federal cases:

Allen v. Woodford, 395 F.3d 979 (CA9 2005) .... 12,

Anderson v. Sirmons, 476 F.3d 1131 (CA10 2007) .. 13,

Arizona Life v. Stanton, 515 F.3d 956 (CA9 2008) ..33,


Attorneys Trust v. Videotape Computer

Products, 93 F.3d 593 (CA9 1996) .............. 33,


Battenfield v. Gibson, 236 F.3d 1215 (CA10 2001) .. 13,

Bond v. US, 131 S.Ct. 2355 (2011) ....... 9, 34, 51,

Bordenkircher v. Hayes, 434 US 357 (1978) ....... 44,

Brady v. US, 300 F. 540 (CA6 1924) ............ 21,

Brooks v. City of Seattle, 599 F.3d

1018 (CA9 2009) .................................. 32,

Brown v. Sternes, 304 F.3d 677 (CA7 2002) ....... 13, Carter

v. Bell, 218 F.3d 581 (CA6 2000) .......... 14,

Chew v. Gates, 27 F.3d 1432 (CA9 1992) ......... 42,

City of Kenosha v. Bruno, 412 US 507 (1973) .... 33,

Collins v. Womancare, 878 F.2d 1145 (CA9 1989).. 23,

Connally v. General Const. Co., 269 US 385 ..... 45,

Cooper v, Neven, 641 F.3d 322 (CA9 2010) ....... 28,

Dorsey v. US, 174 F.2d (CA5 1949) ............. 21,

Duncan v. Ornoski, 528 F.3d 1222 (CA9 2008) .... 13,

Elkanich v. US, 327 F.2d 417 (CA9 1964) ....... 21,

Fleck & Assoc. v. City of Phoenix, 47 F.3d

1100 (CA9 2006) ................................. 33,

Frazier v. Huffman, 343 F.3d 780 (CA6 2003) ...... 14,

Gall v. US, 552 US 38 (2007) ..................... 40,

Hamblin v. Mitchell, 354 F.3d 482 (CA6 2002) ..... 13,

Hansen v. Dept. of Treasury, 528 F.3d

597 (CA9 2007) ................................. 48,

Harries v. Bell, 417 F.3d 631 (CA6 2005) ....... 13,

Hart v. Massanari, 266 F.3d 1155 (CA9 2001) ...... 7,

Hernandez v. Campbell, 204 F.3d 861 (CA9 1999) .. 33,

Hill v. US, 358 US 424 (1962) ..................... 43,

Hoohi v. Ariyoshi, 741 F.2d 1169 (CA9 1984) ...... 33,

Hopkins v. Bonvicino, 573 F.3d 752 (CA9 2008) ..... 23,

House v. Bell, 547 US 518 (2006) ................. 28,

Hull v. Rothhammer Int'l, Inc., #C-05-03538-WHA,

US Dist. Court N.D. California (4/13/2006) ....... 48,

Humanitarian Law Project v.

Mukasey, 552 F.3d 916 (CA9 2009) ............... 45,

Jack v. Rhay, 366 F.2d 191 (CA9 1966) ............ 19,

Jackson v. Calderon, 211 F.3d 1148 (CA9 2000) .... 13,

John v. Berry, 469 F.Supp. 922 (2006) ............ 32,

Johnson v. Baldwin, 114 F.3d 835 (CA9 1997) ....... 13,

(iv)

Koon v. US, 518 US 81 (1996) .................... 43,

Kuntz v. Lamar Corp., 385 F.3d 1177 (CA9 2004).. 48,

Lanzetta v. New Jersey, 306 US 451 (1939) ..... 45,

Lee v. Lampert, 653 F.3d 929 (CA9 2011) ........ 28,


Logan v. City of Pullman Police Dept.,

#CV-04-214-FVS (6/13/09) E.Dist.WA at

Spokane, WA ..................................... 32,


Logan v. Weatherly, #CV-04-214-FVS (6/6/09)

E.Dist.WA at Spokane, WA ........................ 32,


Martinez v. US, #08-265-JLR (8/3/09)

W.Dist.WA at Seattle, WA ........................ 32,


McClesky v. Zant, 499 US 467 (1991) ........... 28,

Menna v. New York, 423 US 61 (1975) .......... 29,

Murray v. Carrier, 477 US 478 (1986) ....... 27-28,

Nulph v. Cook, 333 F.3d 1052 (CA9 2002) ....... 44,

Pepper v. US, 179 L.Ed.2d 196 (2011) ......... 39, 40,

Rhomberg v. Wilson, 108 F.3d 339 (CA9 1996) ... 23,

Richardson v. US, 217 F.2d 696 (CA8 1954) ..... 21,

Sawyer v. Whitley, 505 US 333 (1992) ........... 28,

Schlup v. Delo, 513 US 298 (1995) .............. 27,

Seidel v. Merkle, 146 F.3d 750 (CA9 1998) ....... 12,


Sheehan v. Gregoire, 272 F.Supp.2d 1135

(W.Dist.WA at Seattle, WA (2003) ............. 27, 46,

(v)

Shelburg v. City of Scottsdale,

#CV-09-1800-PHX-NVW, USDC Arizona (8./23/2010) .. 23,


Sissoko v. Roca, 412 F.3d 1021 (CA9 2004) ...... 33,

Smith v. Baldwin, 466 F.3d 805 (CA9 2005) ....... 30,

Stankewitz v. Woodford, 365 F.3d 706 (CA9 2004 .. 12,

Strauss v. Comm'r, 635 F.3d 1135 (CA9 2011) .... 43,

Strickland v. Washington, 466 US 668 (1984) ....... 12,

Summerlin v. Schriro, 427 F.3d 623 (CA9 2005).. 11-13,

Tekle v. US, 457 F.3d 1088 (CA9 2005) ........... 23,

Timbisha Shoshone Tribe v. Kennedy, 687

F.Supp.2d 1171 (CA9 2009) ........................ 33,

US v. Allen, 434 F.3d 1166 (CA9 2005) .......... 47,

US v. Ameline, 409 F.3d 1073 (CA9 2005) ........ 17,

US v. Ames, 743 F.2d 46 (CA1 1084) ............. 43,

US v. Bagdasarian, 652 F.3d 1113 (CA9 2011) ... 7, 24-26, 29,


US v. Berrios-Centeno, 250 F.3d 294 (CA5 2001) . 32,

UA v. Becker, 536 F.2d 473 (CA1 1976) ........ 43,

US v. Bibler, 495 F.3d 621 (CA9 2007) .......... 43,

US v. Broncheau, 597 F.2d 1260 (1979) ........... 32,

US v. Buckley, 689 F.2d 893 (CA9 1982) .......... 34,

US v. Caicedo, 47 F.3d 370 (CA9 1995) .......... 34,

US v. Caperell, 938 F.2d 975 (CA9 1991) ........ 34,

US v. Caperna, 251 F.3d 827 (CA9 2001) ......... 17,

US v. Ceja-Prado, 333 F.3d 1046 (CA9 2003) ..... 49,

US v. Coplon, 185 F.2d 629 (CA2 1950) ........... 21,

US v. Cortez, 973 F.3d 764 (CA9 1992) ....... 43-44,

US v. Culpa-Guillen, 34 F.3d 860 (CA9 1994) ...... 41,

(vi)

US v. DeMott, #CR00-79-S-EJL and
#CV04-347-S-EJL, USDC Idaho (2/22/07) ...... 33, 48,

US v. Fowler, 794 F.2d 1446 (CA9 1986) ......... 43,

US v. Fuchs, 218 F.3d 957 (CA9 2000) ............ 30,

US v. Fullbright, 105 F.3d 443 (CA9 1995) ....... 23,

US v. Gardner, 988 F.2d 82 (CA9 1993) ........... 17,

US v. Garza-Juarez, 992 F.2d 1032 (CA9 1993) .... 17,

US v. Goodwin, 457 US 368 (1982) ............... 44,

US v. Gowen, 40 F.2d 593 (CA2 1930) ............. 21,

US v. Grigg, 498 F.3d 1070 (CA9 2007) ........... 23,

US v. Habermann, #CR11-029-JLR,
W.Dist.WA at Seattle, WA (5/11/2011) ........ 4, 35-36,

US v. James, 980 F.3d 1314 (CA9 1992) ........... 34,

US v. Jensen, 93 F.3d 667 (CA9 1996) ............ 34,

US v. Johnson, 956 F.2d 894 (CA9 1992) .......... 17,

US v. Koon, 45 F.3d 1303 (CA9 1995) ............. 15,

US v. Koon, 833 F.Supp. 769 (CA9 1993) .......... 17,

US v. Lindenfield, 142 F.2d 829 (CA2 1944) ....... 21,

US v. Lipsey, 62 F.2d 1134 (CA9 1995) ........... 17,

US v. Lopez-Garcia, 316 F.3d 967 (CA9 2002) ..... 17,

US v. Mayweather, 431 F.2d 692 (CA9 2005) ....... 17,

US v. McClelland, 72 F.3d 717 (CA9 1996) ........ 17,

US v. Mendoza, 957 F.Supp. 1155 (CA9 1997) ..... 33,

US v. Mercer, 133 F.Supp. 288 (CA9 1955) ....... 34,

US v. Miller, 991 F.2d 552 (CA9 1993) ............. 17,

US v. Mondragon, 228 F.3d 978 (CA9 2000) ....... 53,

US v. Morales-Uribe, 470 F.3d 1282 (CA8 2006) ... 38,

US v. Murphy, 65 F.3d 758 (CA9 1995) .......... 44,

US v. Navarro, 959 F.Supp. 1273 (CA9 1977) ..... 32-33,

(vii)

US v. Pizzichiello, 272 F.3d 1232 (CA9 2001) ...... 17,

US v. Purdy, 264 F.3d 809 (CA9 2001) .......... 45,

US v. Ramos-Oseguerra, 120 F.3d

1028 (CA9 1996) .................................. 17,

US v. Ratigan, 351 F.3d 957 (CA9 2003) ........ 32-33,

US v. Recio, 371 F.3d 1093 (CA9 2004) .......... 43,

US v. Shrewsbury, 80 F.2d 1296 (CA9 1992) ..... 17,

US v. Stewart, 420 F.3d 1001 (CA9 2005) ...... 24, 34,

US v. Sutcliffe, 505 F.3d 944 (CA9 2007) ...... 25, 37,

US v. Swarovski, 557 F.2d 40 (CA2 1977) ....... 21,

US v. Takai, 941 F.2d 738 (CA9 1001) ........... 17,

US v. Tarallo, 380 F.3d 1174 (CA9 2004) ........ 44,

US v. Thordarson, 646 F.2d 1323 (CA9 1981) ..... 34,

US v. Tsosie, 639 F.3d 1213 (CA9 3/6/11) ....... 43,

US v. Twine, 853 F.2d 676 (CA9 1988) ....... 25, 37,

US West v. Nelson, 146 F.3d 718 (CA9 1988) ..... 32,

US v. Williams, 553 US 285 (2008) ............... 45,


US v. Wilson, #CR-10-130-JCC,

W.Dist.WA at Seattle, WA (10/18/10) .......... 4, 35-36,


Wakagira v. City of Seattle, #08-1108-JLR

W.Dist.WA at Seattle, WA (8/3/09) ................ 32,


Wallace v. Stewart, 184 F.3d 1112 (CA9 1999) .... 12,

Ward v. US, 316 F.2d 113 (CA9 1963) .......... 21,


Washington Local v. Int'l Brotherhood of

Boilermakers, 621 F.2d 1032 (CA9 1980) ........ 33,

(viii)

White v. Ford Motor Co., 312 F.3d 998 (CA9 2000) ..44,

White v. Lewis, 874 F.2d 599 (CA9 1989) ..... 28, 44,

Williams v. Anderson, 460 F.3d 789 (CA6 2006) ... 13,


US v. Young, #CR-11-128-RSL US Dist.

Court W.D. of WA at Seattle, WA (2011) ........ 37,


*End Table of Authorities.

(ix)

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 1 2 2012

FILED _____  _____
DOCKETED _____
                        DATE          INITIAL

Certificate of service:

I, David R. Myrland, do hereby declare under penalties of perjury that I did deposit in U.S. Fisrt Class post this supplemental memorandum, table of authorities, and motion for leave to file oversize brief in adequate packaging addressed to the following parties:

Ninth Cir. Court of Appeals

P.O. Box 193939

San Francisco, CA    94119-3939


US Dept. of Justice

700 Stewart Street

Seattle, WA    98101   Attn: V. Lombardi


I, David R. Myrland, am a citizen of the United States (26 CFR 1.1-1) and I am over eighteen years of age.

_____        7/9/12
        Signature                                Date